UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICKEY BARNES — CIVIL ACTION NO. 10-cv-1281

VERSUS — JUDGE HICKS

WARDEN, LOUISIANA STATE PENITENTIARY — MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Rickey Ray Barnes ("Petitioner") of armed robbery. Petitioner was adjudicated a fourth-felony offender, and the trial judge imposed the maximum sentence, natural life. The conviction and sentence were affirmed on direct appeal. State v. Barnes, 685 So.2d 1148 (La. App. 2nd Circ. 1996), writ denied, 703 So.2d 602 (La. 1997).

Petitioner later filed a motion to correct his sentence. He argued that the sentencing judge erroneously applied an amendment to the multiple offender statute that was not effective until after the date of the crime. The trial court denied the motion. The state appellate court granted a writ in part and admitted that it cited the wrong version of the statute in its appellate opinion. The court chose to remedy the matter by amending the natural life sentence to the minimum 99-year sentence that Petitioner could have received under the proper version of the statute.

Petitioner filed a writ application to the Supreme Court of Louisiana and argued that the appellate court should have remanded his case for a new sentencing hearing at which he could have presented evidence of mitigating factors that might warrant a sentence below the statutory minimum. The Supreme Court denied relief. Petitioner now seeks federal habeas corpus relief on the ground the state court violated his rights to due process and equal protection of the laws when it did not allow a new sentencing hearing. For the reasons that follow, it is recommended the petition be denied.

**Relevant Facts**

Two men wearing pantyhose masks and carrying handguns robbed a McDonald's on Linwood Avenue in Shreveport around midnight on August 18, 1994. One of the men pointed a gun at the manager, who was counting money in the office, and ordered him to lie on the floor. The man then put the gun to the manager's head and told him to open the safe. The manager and two other employees were made to lie on the floor at the rear of the store while the men escaped with a deposit bag and a bank bag that contained gift certificates. The manager said the pistol used by one robber was a rusty, silver .22.

Less than two hours later, a Shreveport police officer made a traffic stop of a suspected stolen car. Petitioner got out of the car. A passenger stayed inside. The officer noted that the passenger was holding a vinyl bag in his lap and spotted a handgun at the man's feet. As he retrieved that gun, he saw another. They were a .38 special revolver and a silver .22 that was not in good condition. Police also recovered from the car a bank bag with McDonald's gift certificates inside, a bank bag under the driver's seat marked

"McDonald's, Linwood," a leg of pantyhose, and two jackets that were similar to the description of jackets worn by the robbers.

Petitioner told police that the man in his passenger seat had offered him $10.00 for a ride home, and he did not know how the items found in his car came to be there. Petitioner said he was not involved in the robbery and had been at the Palomar Motel that evening with a girlfriend. The girlfriend, however, did not corroborate his story. A deputy at the local jail testified that he witnessed a meeting between Petitioner and the girlfriend at which Petitioner asked her to sign an affidavit stating that he was not involved in the robbery. The girlfriend refused to do so. After she left, Petitioner told the deputy that he had worked at that McDonald's and knew what time the safe would be open, how to get in the restaurant, and about how long it would take to get in and out. He thus implied that he was one of the robbers. Petitioner testified at trial and maintained his story about being at the Palomar Motel, but the jury convicted him of armed robbery.

Judge Scott Crichton stated at a sentencing hearing: "The law requires that a person adjudicated as a fourth felony offender, under the particular circumstances of this case, receive a sentence not less than the longest sentence for a first conviction, which is in this case 99 years at hard labor, without benefit of probation, parole, or suspension of sentence, and a maximum of natural life at hard labor as a multiple offender." Tr. 556-57. (Armed robbery carried a maximum sentence of 99 years.) Despite Petitioner's allegations in his later motion, the record shows that the trial judge applied the correct version of the statute.

Judge Crichton recited the details of the crime and noted the danger to the victims, at least one of whom had a gun placed to his head. Petitioner had a lengthy criminal history that began as a juvenile at age 15 and saw him convicted of a crime almost annually, except when he was in prison. He had convictions for six felonies and seven misdemeanors, plus an additional seven or more arrests where the charges were dismissed. The court noted that a bailiff had testified that he transported Petitioner to and from court, during which time Petitioner would threaten to "AK" the deputies almost every time they had contact with him. Disciplinary records from the jail showed 55 write-ups, including possession of a shank. Just a few days before the hearing, Petitioner told an officer: "Fuck you. Open this fucking door so I can kick your mother fucking ass. I'm going to fuck your mom and put a call on the street to kill your ass." The judge said there were "pages and pages" of such reports.

Judge Crichton concluded that the "absolute maximum sentence allowed by law is mandated in this case," so he imposed a sentence of natural life. He added that "this man should never get out of prison" and "deserves to spend every minute of his life in prison until he dies." Tr. 556-565. The judge also set forth his reasons in writing when he later denied a motion to reconsider sentence. Tr. 171-73. The undersigned is persuaded that when Judge Crichton said the sentence was "mandated," he meant because of the relevant sentencing factors and not the statute. He had earlier recited the proper sentencing range of 99 years to natural life.

Petitioner raised an excessive sentence claim on direct appeal. The appellate court cited the post-crime version of the multiple offender statute that mandated life imprisonment

in this setting. It did permit that a sentence within the statutory limits can be excessive under the state constitution. It reviewed the facts, however, and found the sentence was not constitutionally excessive. Tr. 672-73.

Petitioner later filed in the trial court a motion to correct illegal sentence. He argued that the sentencing judge had improperly applied the post-crime version of the multiple offender statute that mandated life imprisonment. The applicable law, Petitioner argued, did not mandate a life sentence unless the fourth felony and two of the prior felonies were crimes of violence. Petitioner's prior crimes were not crimes of violence. Tr. 1280-93. Judge Mike Pitman reviewed the motion and found that the proper statutory provision provided that if the fourth felony is, on a first conviction, punishable by any term less than natural life, then the person "shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than 20 years and not more than his natural life." Armed robbery allows a 99-year sentence (without benefits) for a first conviction, so Judge Pitman determined the range of punishment was between 99 years and natural life. That is precisely the range stated by Judge Crichton at sentencing. Judge Pitman noted the careful consideration of aggravating and mitigating factors in the prior rulings and concluded that "the only punishment appropriate was Petitioner's natural life in prison for the clear reasons that he is a danger to the community." Tr. 1320-21.

Petitioner filed a writ application with the state appellate court. It agreed that he should have been sentenced under the provisions of La. R.S. 15:529.1 in effect at the time

he committed the crime and that "this court's opinion, which found that the sentence had been imposed under [the post-crime version], was in error." The court then recited the sentencing provision in effect on August 18, 1994 (the date of the robbery) and determined that the proper sentencing range was just as stated by Judge Crichton and Judge Pitman. The sentence "could have been no less than the mandatory minimum 99 years at hard labor without benefit of parole, probation, or suspension of sentence." The court added that the statute "indicates the applicant could have been sentenced to a life term, but the imposition of such a term was not mandatory." The court then concluded:

> Because there is no practical difference between a 99 year non-paroleable sentence imposed on an adult offender and a natural life term, we see no need to remand this case to the trial court for resentencing. Instead, we grant the writ, and remand for the trial court to make a ministerial correction of the sentence to amend it from a life sentence to the mandatory minimum 99 year sentence without benefits.

Tr. 1431-32. It appears the appellate court reduced Petitioner's sentence based on the mistaken statutory reference in its prior opinion, even though Petitioner was sentenced pursuant to the correct statute.

Petitioner was nonetheless unhappy with the statutory minimum sentence. He filed a writ application to the Supreme Court of Louisiana and argued that the appellate court erred in amending his sentence without remanding the matter for a new sentencing hearing. He argued that he could have presented mitigating evidence at the hearing in an attempt to warrant a sentence below the statutory minimum 99 years. He represented that he had seven children by the time he was arrested at age 27, he had turned over his life to God, no one was

hurt or put in danger in the crime, his parents were elderly and needed his help around the house, and he had learned a big lesson. Petitioner said that, if released, he would not only do better but would speak to the younger generation about crime and doing wrong. Finally, Petitioner noted that he had turned done a 25-year plea bargain before trial, so he considered his lengthy sentence nothing but a punishment for going to trial instead of taking the plea bargain. Tr. 1437-52. One might, however, look at it as punishment for his foolishness in turning down the plea bargain when faced with overwhelming evidence of guilt. In any event, the Supreme Court of Louisiana denied writs without comment. Tr. 1609. Petitioner filed a motion for rehearing (Tr. 1610), and it was also summarily denied. Tr. 1618.

**Timeliness**

The State argues that the federal petition is untimely. Its argument is based on the premise that the conviction became final, and commenced the running of the one-year limitations period in 1997 after completion of the direct appeal. The Fifth Circuit, however, stated in assessing whether this was a second or successive petition that the new sentence constitutes a new judgment within the meaning of 28 U.S.C. § 2244(b). Doc. 13. The limitations period runs from the date on which that judgment became final. Petitioner promptly filed this federal petition after conclusion of his challenges regarding the amended sentence. Accordingly, there is not a valid timeliness defense.

**Exhaustion of State Court Remedies**

The State also argues that Petitioner has not exhausted a federal claim by fairly presenting it to the state courts. An application for a writ of habeas corpus "shall not be

granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). One aspect of exhaustion requires that the claim be presented to the state court within a federal constitutional framework. Scott v. Hubert, 635 F.3d 659, 667 (5th Cir 2011), citing Baldwin v. Reese, 124 S.Ct. 1347 (2004). That is because "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). The determination of whether the claim was presented in such a fashion is made by looking to the briefs filed in state court. Smith v. Digmon, 98 S.Ct. 597 (1978); Soffar v. Dretke, 368 F.3d 441, 467 (5th Cir. 2004).

All of Petitioner's filings in the state court were based solely on state law, such as La. C. Cr. P. 894.1 and state court decisions regarding sentencing procedure. Petitioner did not plausibly invoke federal law in connection with his motion to correct sentence until the final paragraph of his petition for rehearing in the Supreme Court of Louisiana where he wrote: "Petitioner is being denied due process of law and equal protection of the law and constitutional and fair sentence." Tr. 1614. Such a generic assertion of what might be federal constitutional rights, but could also be state constitutional rights, especially absent a factual context that suggests a basis for a federal claim, is not adequate to exhaust a federal claim. This is demonstrated by Baldwin, in which the Court held that a claim in a state court petition for ineffective assistance of appellate counsel did not exhaust a federal Strickland claim because the state court filing did not adequately identify the claim as federal in nature. Nothing in Petitioner's submissions in the state court clearly identified any federal constitutional claim that is cognizable on habeas review.

**The Merits**

The petition is subject to dismissal for lack of exhaustion of a federal claim, but the undersigned will explain why it also lacks merit. Petitioner is no more specific in his federal petition at identifying any particular federal constitutional errors. He makes generic invocations of due process and equal protection, but he cites no federal constitutional authority that would require a new sentencing hearing in his circumstances.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

Petitioner has not identified any United States Supreme Court decision that clearly establishes a rule of federal law that requires a new sentencing hearing when a sentence is amended to the statutory minimum and a full sentencing hearing has already been afforded. The State, on the other hand, cites a decision that distinguishes proceedings that (1) modify an existing sentence and do not require the presence of the defendant unless the sentence is made more onerous from those that (2) impose a new sentence after the original sentence has been set aside, which constitutionally requires the appearance of the defendant. U.S. v. Moore, 928 F.2d 654, 656 (5th Cir. 1991). Petitioner's case falls in the first category, for which no hearing or appearance is required.

Moreover, there is virtually no chance that Petitioner, if such a hearing were held, could persuade a state court judge to depart below the statutory minimum. Such departures are limited to the rare case where the punishment is found to be so excessive as to violate the Louisiana constitution. A sentence is subject to such an attack only if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276, 1280 (La. 1993). To rebut the presumption that a mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence, that, because of unusual circumstances, he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Shaw, 108 So.3rd 1189, 1196 (La. App. 5th Cir. 2013).

This court may not apply state law to decide whether Petitioner is entitled to a lesser sentence, but a review of that law shows that it is extraordinarily unlikely he could obtain any relief at a new sentencing hearing. Strong factors against him include his lengthy criminal history, the facts of the crime, his behavior while in custody, the other reasons that cited at length by the sentencing judge, and the fact that Louisiana courts view armed robbery as "a pernicious offense" that creates a great risk of emotional and physical harm to the victim and witnesses. State v. Celestine, 92 So.3rd 335, 337 (La. 2012). Petitioner has not demonstrated any federal constitutional error or conceivable prejudice.

Accordingly,

**IT IS RECOMMENDED** the petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days

from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of February, 2014.

Mark L. Hornsby
U.S. Magistrate Judge